The court is now in session. Our next case, Your Honor, if we're ready, is 22-1844 ST Engineering Marine, Ltd. v. Thompson, MacColl & Bass. Counsel? May it please the court. My name is Jim Bowie. I am here on behalf of the Appellant, Thompson, MacColl & Bass, and I would like to reserve two minutes for rebuttal, if I might. You may. This case presents the issue, or the primary question, of whether the Maritime Bar, generally, and Thompson, MacColl & Bass, specifically, in 2015 should have understood that this Court's decision in Dean v. Chindrow, in 2010, affected a major shift in how or not a primary supplier, directly to a vessel, of the necessary, could assert a maritime lien. Counsel, I'm not comfortable with that statement of the question, because it seems to me the more relevant question is whether a more reasonably skilled and diligent maritime lawyer, I think, on the date in question, would have regarded the dicta in the Tramp Oil decision as good law and controlling. To me, the question isn't Chiambro, which I agree with you, is a different case It's the fact that Chiambro sent a clear indication that the First Circuit was ready to follow Lake Charles-Stevador and the evolving line of Fifth Circuit cases, and to look at the development of that line of cases and weigh that against the dicta in Tramp Oil, which you so much in your filings, is what gives me pause about this case. Your Honor, I don't think that those are necessarily inconsistent formulations. Maybe not. In this case, I think it is fair to say that Mr. Bass, who actually was the lawyer, you'll note, in Chimbro, did appropriately analyze the law as it existed in 2015, and felt that Tramp Oil, albeit part of what is being referenced was, in a sense, dicta, nonetheless... Not in a sense, it was dicta. But in order to get to the holding in that case, the court repeated after its initial statement of no one disputes that there was a lien, used as a basis the fact that the direct suppliers had a lien in order to support its analysis of how Tramp Oil, a third party in the chain, if you will, was to have its claim for a lien analyzed. It's important to look that as of 2015, there really were two different lines of cases, and they applied in very different settings. And what was misunderstood in this case, I would suggest, by the district court, was that as of 2015, Dean and Lake St. Charles dealt with very different situations than the true middleman line of cases, which dealt with primary suppliers. In Dean, we are dealing with what was truly the general contractor line of cases, a situation in which someone, generally speaking, is supplying a material to someone else, and usually in the repair setting or the situation where the vessel was not directly in navigation. In fact, if you look at Dean, Dean really has very little, if anything, to say about the direct supplier of necessaries, the direct provider, like Sprague in this case. Counsel, can I ask you a question? I think you said in your brief that as of 2015, there was no case that had denied a lien to a fuel supplier. Is that correct? Did I understand that correctly from your brief? I was unable to find any such case that in a case such as this, where someone like Sprague, and that's one of the reasons for the middleman line of cases. These cases tended to occur when you had somebody that was supplying direct necessaries. You were supplying food to the crew, you were supplying fuel to the vessel, what have you. At least since the 1970 amendments, we were unable to find any case where a court denied a direct supplier of necessaries, someone who had actually gone to the vessel and provided the material, a lien. I asked that question of the plaintiff's expert in that trial about, can you show me this, and frankly, I got, well, I'd have to go back and look at the cases. At no time did STEM, STEM for technology, I'll refer them to STEM because that's sort of the way we went through the trial. Did STEM suggest that there was such a case? And that's what was facing Mr. Bass when he was having to analyze this issue with STEM in 2015. May I ask you a follow-up, because this is where I was just trying to understand. If there was no case at the time that denied a lien to a fuel supplier, somebody that supplied the fuel directly to the vessel, how does that square with your argument, which I think you were just getting to, that the attorney was relying on some factual research that was going to be done by STEM's in-house counsel? Because what facts would have been relevant if, in fact, the law was so clear that a lien was never denied when somebody provided fuel directly to the vessel? Well, I guess two pieces to that. One is it's important to recognize that this case was brought well after 2015 and well after there were a line of further cases that developed that raised issues about how to analyze the multi-level situations that you have where a maritime lien might occur. At that time, it wasn't just Tramp Oil. Tramp Oil was there. And Tramp Oil did, at least on a number of occasions, make clear that when a direct supplier, it's at least assumed that the direct supplier has a lien if they provide the materials directly to the vessel. It wasn't just that, though. The Ken Luckey case was almost exactly this case. And Ken Luckey... Counsel, I'm sorry. I think maybe I didn't make my question clear, so I apologize. If the law was in 2015, I'm just talking about 2015, I understand that the legal standard, we have to look at what the lawyer knew at the time that the advice was provided. Of course, that makes sense. But if the law was so clear in 2015 that if you provide fuel to a vessel, you'll always get a lien, what was the point of the language in the email that you cite in your brief as well that you were waiting to get some sort of factual information from STEM's in-house counsel? That's my question. What facts would have been relevant if the law is you always get a lien if you're the fuel supplier? It was actually looking at the other side, which is if there's anything we don't know, if there's something odd here that we should know, then you need to tell us. And that obviously was never forthcoming. I don't think the issue in terms of agency and the issue of looking for something further from STEM only becomes important if you are taking the position that there needs to be a well-defined, there needs to be an explication of how the agency relationship works step-by-step-by-step down the chain. That's what the middleman rule was really meant to avoid. And that's why I went to Ken Luckey, because Ken Luckey is almost exactly the Sprague case. You have an owner, you have a charterer. The charterer has a general agent, just in STEM had Fleet. I think it was Bulk Fest or something like that, Bulk Well, in Ken Luckey. They went to then another party, Eurosteam, I believe it was, in Ken Luckey. Here it was BIC. And then those parties passed the order along to the direct supplier. I mean, Fuels was the plaintiff in Ken Luckey who was held to have a lien. And that was the background that Mr. Bass was looking at when he was analyzing this case in 2015 for Sprague. It's interesting to note that in Dean, the first, this court, cited Ken Luckey along with Lake City Charles in the same stream. It does not, at no time, did Dean say that either Tramp Oil isn't good law anymore, nor did it in any way say that Ken Luckey isn't good law. Instead, it focused on what was actually before the court in Dean, which was a supplier of steel to a fabricator who then made a product, who then gave it to Chinbro, who then put it into a vessel. Is it your position that Ken Luckey somehow just falls within the middleman line of cases? Yes. But isn't it a requirement in the middleman line of cases that the supplier supply the necessary on order from the master or someone who's in the direct line as an agent of the master of the ship, not an independent contractor who is ordered by a third party, a fuel broker, or something like that? Is that the distinction that the middleman line of cases make? No. The middleman line of cases effectively relaxes, if you will, the need for a direct agency relation from one to one. What the middleman line of cases says is that when the charterer or the vessel owner or someone in that role, if you will, initiates an order for fuel, we are not going to get terribly concerned about the niceties of how that order gets transferred to the direct supplier, the person who the maritime lien statute was meant to protect, who actually takes materials out, puts it on the boat, and deals with the boat in being able to provide the bunkers or the food for the crew or what have you. And that's why I would suggest Ken Luckey is this case. Ken Luckey had the same type of multi-level parties as in this case. And Eurosteam, I would equate to BIC, and Ken Luckey, it was allowed. And it makes sense when you look at what the purpose of the statute was, which was to make clear that we're going to protect the direct provider of necessaries whenever possible. So, counsel, your argument is because the Dean case favorably cites Ken Luckey and Ken Luckey supports the lawyer's advice, that that's enough to show that the advice was reasonable? I would say that, yes. I mean, it does so while it is in a situation where it then goes on and talks about Lake St. Charles. But Lake St. Charles is the rice miller who is clearly out of the chain, and that was because of the factual circumstances of Dean, which was it was a general contractor case. It wasn't a middleman case. Thank you. I believe my time is up. I believe it is. Does anyone have any further? Judge Salia? No. Thank you. May it please the Court, good morning. My name is Lee Bowles. I represent ST Engineering Marine Limited on this appeal. As the Court has seen from Mr. Bowie's arguments in the briefs, the appellant law firm in this case makes two arguments. First, that the district court erred in its interpretation of the state of maritime law in the First Circuit in November of 2015, and second, that the district court erred in its factual determination that neither STEM nor its charter or agent authorized or controlled the selection of Sprague, the bunker supplier in this case, and that as a result STEM proved the case within a case that Sprague did not have a maritime lien. Neither argument is persuasive. With respect to the argument that the district court erred in its interpretation of the state of maritime law in 2015, the district court did not err that the most recent First Circuit case analyzing the Maritime Lien Act at that time was Chinbro Corporation v. Dean. Counsel, could you address your opposing counsel's argument about Ken Luckey, which is favorably cited in Dean? It is, but I apologize, Your Honor. It is cited in Dean, in the Dean case, but the purpose of it being cited is when Dean in the Chinbro case is discussing what it terms, and this is the words that the court used, the minimal exception. It falls within that minimal exception to the general rule and to fit within the exception a subcontractor, and it doesn't have to be confined to a fuel supplier. It can be any type of subcontractor. Providing necessaries must show that an entity authorized to bind a ship controlled the selection of the subcontractor or its performance. Interestingly, Your Honor, in so holding, the Chinbro case actually cited to the Tramp Oil case at page 45 of that decision, and what it said very briefly is that when it's cited to it, it's cited to the language that there has to be someone authorized to select the subcontractor in that case. It's significant, I think, when you look. I completely agree. I have argued consistently in this case that the language relied upon by the law firm in this case is dicta in Tramp Oil, but when we look at that case, I think it can be instructive when you look at what Tramp Oil said in that case, and specifically how it reads is, No one disputes that Exxon and Colonial, as direct suppliers of the fuel to the mermaid, would be entitled to the maritime lien. Fuel is unquestionably unnecessary within the meaning of the act, and here's the important part, and it was furnished upon the order of someone with authority to do so. I went back and looked at the district court opinion, which is actually the second district court opinion, because the case had gone up originally to the court on a jurisdictional issue, but when you actually go back and look at the district court decision that was on appeal in Tramp Oil, from which we see this language upon which the law firm relied, what it says is there does not seem to be controversy over the fact that the bunker fuel was furnished to the mermaid for its own use and that the fuel was supplied on instructions of the master. That is the minimal exception. That is so, while I certainly would say to this court the Tramp Oil law language is dicta, it is entirely consistent with the Chinbro decision. The Chinbro decision has a general rule, and then it has the minimal exception, and so it's not as if I would submit to this court that you have to read Chinbro and Tramp Oil necessarily as opposites. I think they can be read in harmony. It's just that in 1986, you know, long before the Chinbro case was decided, you had a court analyzing a fact situation and on appeal saying there doesn't seem to be a dispute here. There was no dispute because down below everyone agreed that you fit within what we now call or the Chinbro court referred to as the minimal exception, which was that someone with authority to do so had authorized these particular subcontractors. So I think it's really somewhat of a... So, counsel, as I understand your argument, the fatal defect in the fuel vendor's lien claim in this case is that the fuel vendor had not... is that the selection of the fuel vendor had not been controlled by the charterer, the master, or someone with authority to buy the ship. That is absolutely correct, Your Honor. It certainly wasn't controlled by Stem, the owner. It wasn't controlled by Novistar, the charterer, and the court found as a factual matter that FleetPro was acting as an agent of the charterer, but where it also made a factual determination that the relationship between FleetPro and BIC, Bunkers International, was a contractual one. But, counsel, how is that different from Tramp? Well, I'm looking at the decision right now on page 44, and I'm just following through. So you've got the vessel, the master. The charterer is Logos. The charterer asks J&L Bunkers to make the arrangements for supplying the fuel. J&L, in turn, contacts Tramp. How is that different from this case? I mean, what we don't have the benefit of in the decision is you have a conclusion that no one disputes. That is what I call the dictum. But we don't have the benefit, actually, of knowing how that transaction actually unfolded. We're just left, more or less, with a conclusion by first the district court in Tramp and then the appellate decision that there was some kind of authority because it was upon the order of someone with authority to do so. It's difficult to say because, again, it's dicta. Obviously, in Tramp Oil, there was a different issue at play in that case rather than the one that we have here today. So it's difficult for me to respond to that question, Your Honor, because I don't really know the specifics of how they may have concluded, correctly or incorrectly, that someone with authority to bind the master did so. I can't answer that question. I just don't know. But what about the Ken Luckey case, going back to the Ken Luckey case? Is it more clear on this issue? Because it does seem to me that it's favorably cited in Dean. It is favorably cited, but Dean is very clear. I mean, I think, again, it's... But just on the, if you don't mind, just on the Ken Luckey case itself, do you disagree with your opposing counsel's interpretation of that case? I do because I think it's, I think Ken Luckey falls more within what I would call the minimal exception, where in Ken Luckey, there was some authority given for the retention of the subcontractor in that case by someone with authority to do so. And so, I mean, the case law in Chimbrow seems very clear that in that type of situation, you need to be able to establish, generally, a subcontractor is not entitled to a lien. I would submit that is the law as it existed as a result of Chimbrow, unless you can find a way to bring yourself within the exception to that rule. So I think Ken Luckey is consistent with the minimal exception, and in this case, the court found as a factual matter that the minimal exception didn't apply. I don't necessarily agree either that there are these two distinct lines of cases. I think there's one analysis with what the court has called a minimal exception. And the court here, the district court in this case, found that that minimal exception did not apply. There's also a secondary argument that has been made that there was a failure to prove the case within a case. I do not believe that argument is correct, but in order to... And if I just... Actually, Your Honor, if I could just go back to the one other implication of the appellant's argument in this case is that the fuel subcontractor would always have a lien because the word that they insert into the analysis, which none of the courts put in there, is that it originated with someone with authority to do so. But that's not really the test. The test has to be someone with authority has to actually say, use that particular subcontractor or some fact pattern similar to that. Are you aware if there is a case as of 2015 where a fuel supplier was denied a lien? No. You're not aware or there wasn't? Well, I'm not aware of one, so I'm assuming I think Mr. Bowie and I have canvassed the law and I'm not sure that there is one out there. So you agree with that statement? I would agree with it, but again, I also do not read the Chinbro case to say fuel suppliers should be treated differently than any other particular subcontractor. I mean, the bunker supplier is giving or supplying a necessary to the ship, but the analysis is still the same. So for example here, if Fleet Pro as the agent of the charter had authorized the use of spray, there would be a lien. I think the district court said that in its decision, but that is not the factual finding of the court here. And that is on the second argument, that's why the second argument being advanced on appeal does not work either, because we have to think of the standard of review. It's not entirely clear to me from the brief of the appellant, but the standard of review for the case-within-a-case analysis, which is really what they call causation, but what the argument really is, you failed to prove the case-within-a-case, but the district court's decision on the case-within-a-case hinged upon certain factual findings which need to be reviewed under a clearly erroneous standard. It seems to suggest in the briefing that the appropriate standard that this court should apply would be de novo, but I do not believe that's true since we're talking about factual findings. They rely on a case called Blue Cross Blue Shield v. AstraZeneca, but that case, when you read the case, it's cited in their brief, states, the findings of fact, after a bench trial, are reviewed for clear error, and they similarly rely on a Sierra Fria Cork v. Evan case, a decision authored by you, Justice Selya, where you held, or the court held, we consistently have reviewed adjudications of negligence arising in the course of a bench trial by reference to the clearly erroneous test, so that in order for this court to conclude that the district court in some fashion erred in its conclusion that Sprague did not have a maritime lien, which was the case within a case, then you would have to overturn the district court's factual findings, which were actually quite detailed because the court did an analysis of agency and contractual relationship in reaching its conclusions because that conclusion hints very much on whether or not what the status of BIC was, and its conclusion as a factual matter, because that was a factual issue, was it was not an agency relationship. It was a contractual relationship. But those facts weren't really disputed, were they? Am I misunderstanding? I thought really what was disputed was the legal implication of the facts, not the facts themselves. I would tend to agree with you they weren't disputed, but an argument on appeal here is that the court erred in its conclusion that the plaintiff proved its case within a case. Well, the case within a case, the way the case within a case was proved was by establishing that Sprague did not have a maritime lien. So that was at issue there. There was some sparring during the trial with respect to who had the burden of proving the case within a case, and I argued it was actually the defendant in the case. And the court did not agree with me and placed the burden on the plaintiff, and we were successful in meeting that burden in the court's eye. But again, I think for purposes of this appeal, for this court to review that, that analysis hinges upon the court's factual conclusions. It really hinges upon the finding of causation, but the finding of proximate cause is what they're challenging, which is typically reviewed for clear error. I agree with you, Your Honor, and essentially that is what it is. It would have to be the court committed or made a clear error in its factual determinations as to proximate causation, and I do not think that is supported by the record because the court clearly laid out its factual findings supporting its decision. So for all those reasons, I would urge this court to affirm the district court's decision. I believe that it appropriately and correctly interpreted, and it really confined itself to, when you look at the decision, the district court was very concerned in saying, I'm really interested in what the state of the law was in the First Circuit in November of 2015. And the court concluded that Chimbrough was the applicable standard and that under the Chimbrough analysis, which, if I could just finish, Your Honor. You may. Which the evidence was that the attorneys in the case, they didn't really even do that analysis of Chimbrough. And I don't mean to be flippant about it, but it was more that there's tramp oil, we all know about tramp oil, and therefore a fuel supplier must have a lien, which the district court did not believe was the appropriate analysis and is the reason they concluded that the law firm was negligent. Thank you. Thank you. Thank you. Thank you. A couple of points. First, Mr. Belz argues that Dean effectively changed the law with regard to the middleman line of cases. I would suggest that it recognized that Dean didn't fit in the middleman line of cases and really didn't, and probably under those circumstances shouldn't have, engaged in an in-depth analysis of how the middleman line of cases applies, particularly with regard to a direct provider of necessaries such as spray. Secondly, with regard to the issue of the analysis of the agency chain, if you will, the court did appropriately find that the burden was on STEM to prove that the order, and it's interesting that people sort of assume that order means agency, but that isn't what the statute says. It's on the order of the owner, that that burden was on STEM, and yet in its order it says, here no evidence was presented that STEM, Novastar, Cruises, or Fleet Pro manifested assent that BIC act on its behalf or under its control. Well, that burden was on STEM, and it's striking in this case that the very entity whose assent you're talking about didn't put in evidence to say, that wasn't on our order, that wasn't us. They didn't do that at all. What the court effectively did was shift the burden back to the law firm to prove the lien, as opposed to STEM having the obligation under the analysis of the court to disprove the lien. For those reasons we believe the district court erred. We would ask that the judgment be vacated and that it be remanded for judgment in favor of Thompson, McCall, and Bass. Thank you.